IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ZIAD DARABED, ) | CASE NO. 1:10CV2626 |
| ) | |
| Plaintiff, ) | JUDGE JAMES S. GWIN |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | KATHLEEN B. BURKE |
| MICHAEL J.ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

Plaintiff Ziad Darabed ("Darabed") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act), 42 U.S.C. § 423. Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and/or 42 U.S.C. § 1383(c). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, it is recommended that this case be REVERSED and REMANDED for further proceedings consistent with this Report and Recommendation.

**I. Procedural History**

Darabed filed an application for DIB on March 2, 2007 alleging a disability onset date of September 26, 2005. Tr. 98-100. The state agency denied Darabed's claims initially on May 17, 2007 and upon reconsideration on September 27, 2007. Tr. 75-80. Darabed requested a hearing and, on September 16, 2009 a hearing was held before Administrative Law Judge Thomas A. Ciccolini (the "ALJ"). Tr. 21-40, 81-92.

In a decision dated October 19, 2009, the ALJ determined that Darabed was not disabled. Tr. 8-20. Darabed requested review of this decision by the Appeals Council on November 19,

1

2009. Tr.171-174. Darabed's appeal included a request to consider new medical evidence. Tr. 173. On September 24, 2010, the Appeals Council considered the additional evidence as well as the arguments raised in support of Darabed's claim. Tr. 1. However, the Appeals Council denied Darabed's request for review making the ALJ's decision the final decision of the Commissioner. Tr. 1-5.

## II. Evidence

### A. Personal and Vocational Evidence

Darabed was born on October 2, 1970. Tr. 98. His past work experience includes work as a crane operator and as a cashier/security/supervisor at the E&Z Dollar store that he co-owned with his brother. Tr. 27-28, 112, 130. Darabed has a high school education, with somewhat limited fluency in English. Tr. 28.

### B. Medical Evidence

Darabed has had at least six surgeries on his knees.[1] The record is replete with treatment notes and records that contain evidence of Darabed's reports of pain associated with his knees/legs.[2] 192-197, 198-249, 442-527.[3] The physicians referred to or relied upon by Plaintiff, Defendant and/or the ALJ are noted below.

---

[1] There is some discrepancy as to the number of surgeries. However, the parties do not dispute, and the record supports, that Darabed has undergone six surgeries on his knees during the years 2004 through 2008. Pl's Brief at 5, Def's Brief 3, Tr. 265, 283, 552, 340, 417, 554, 528, 533, 565, 558.

[2] Darabed's complaints of pain also relate to his back and carpal tunnel. However, Darabed's focus is on his leg pain. Tr. 6, 26.

[3] Darabed's "Symptoms Reports" also describe his level of pain. Tr. 125-128, 155-158. During the hearing, Darabed described his pain as constant and sharp with numbness. Tr. 37-38.

Dr. John H. Wood, M.D., an orthopedic surgeon, treated Darabed and performed a number of his surgeries.  Tr. 265, 417, 442-488, 552, 554, 558.

Dr. Stanton-Hicks, M.D., with the Cleveland Clinic Pain Management Clinic, treated Darabed for his knee.  Tr. 530, 540.

Dr. Walter Holbrook, M.D. completed a Physical Residual Functional Capacity Assessment on April 30, 2007.  Tr. 183-190.  This Assessment was reviewed and affirmed by Dr. Myung Cho, M.D.  Tr. 191.

Dr. Jack Andrish, M.D. of the Cleveland Clinic Foundation, Department of Orthopedics, evaluated Darabed on July 20, 2007 and again on September 3, 2009, and performed one of Darabed's surgeries. Tr. 549, 565, 570.

Dr. Gregory A. Moten, D.O. conducted an independent medical examination in connection with Darabed's workers compensation claims on March 5, 2009.  Tr. 571-574.  Additionally, Dr. Robert L. Kleinman, M.D. conducted an independent medical examination in connection with Darabed's workers compensation claims on March 29, 2008.  TR. 575-579.

Following the hearing, Dr. Jill H. Mushkat, Phd. evaluated Darabed on September 22, 2009 to determine if Darabed would be a suitable candidate for a spinal cord stimulator.[4]  Tr. 580-583.  Also, on October 14, 2009, Amber J. Keller, M.D. completed an assessment of Darabed.[5]  Tr. 584.

---

[4] Darabed argues that this report should be considered as "new evidence" requiring a remand.  Pl's Brief at 19, Tr. 5, 173.  For the reasons discussed in FN 11 below, Plaintiff's request for a remand under sentence six of 42 U.S.C. § 405(g) based on "new evidence" is not addressed herein.

[5] Although Darabed does not specifically argue that this report necessitates a remand, Darabed did submit this report along with the Mushkat report to the Appeals Council.  Def's Brief at 17, FN 5.  Tr. 5, 173.   For the reasons discussed in FN 11 below, Plaintiff's request for a remand under sentence six of 42 U.S.C. § 405(g) based on "new evidence" is not addressed herein.

3

## 2. Vocational Expert's Testimony

On September 16, 2009, Vocational Expert Evelyn Sindelar ("Sindelar" or "VE") appeared and testified at the administrative hearing. Tr. 27-31, 34-36. She provided testimony regarding Darabed's prior work. Tr. 27-28. Based on her review of Darabed's file and follow up questions that she posed to Darabed at the hearing, the VE indicated that Darabed's prior work consisted of work as a cashier and as a crane operator. Tr. 27-28. Starting with the premise that Darabed cannot perform his past relevant work, the ALJ asked the VE if there were jobs in northeast Ohio that Darabed could do assuming the following: the job would involve unskilled sedentary work with the following limitations: limited fluency in English, not complex (no bargaining, no mediating, no arbitration), low stress (low production quotas), no exposure to any hazards (moving machinery) or unprotected heights, no frequent stooping or bending and with a sit/stand option (shifting positions to stand for a brief period – not wandering away from the work area). Tr. 28-29, 34. With those parameters set, the VE testified that the following jobs would be available to Darabed in northeast Ohio: a dowel inspector, a table worker, lens-block gauger,[6] a laundry worker and a bench assembler.[7] Tr. 29-32.

Darabed's attorney cross-examined the VE. Tr. 34-37. He requested an explanation as to what exactly a table worker is. Tr. 34-35. He also asked the VE whether all of the jobs she described had pace or production level requirements. Tr. 35. The VE testified that the stated jobs did not have such requirements; the workers in those jobs work at their own pace and are compensated based on the amount of work completed. Tr. 35. The VE did note that accuracy is a requirement in the stated jobs. Tr. 36. Finally, Darabed's attorney asked the VE whether any

---

[6] The ALJ stated that the lens-blocker gauger job seemed too detailed and therefore he requested that the VE provide him with another possible job within the parameters he established. Tr. 31.

[7] The VE testified to the approximate numbers of each of the jobs in both the U.S. and Ohio. Tr. 30-32.

4

of the jobs would be available to Darabed if Darabed could only do sedentary work for thirty percent of the time.[8] Tr. 36. The VE testified that such a limitation would disqualify Darabed from all of the stated jobs. Tr. 36-37.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

---

[8] Darabed's attorney based this line of questioning on a report prepared by Dr. Moten. Tr. 37. When asked if there were any restrictions or modifications, Dr. Moten stated "[c]urrent work restrictions for the allowed conditions in this claim are sedentary work as defined by the Department of Labor as 0 to 10 pounds for 0 to 33% of the work day." Tr. 36.

5

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy. *Id.*

## IV. The ALJ's Decision

In his October 19, 2009 decision, the ALJ found that Darabed met the insured status requirement through December 31, 2011. Tr. 13. The ALJ also found that, "[d]espite the fact that earnings were greater than substantial gainful work activity level in 2006, the Administration determined that the claimant's work activity to October 2006 constituted an unsuccessful work attempt." [9] Tr. 13. Based on this finding, the ALJ continued with the sequential evaluation process. Tr. 13.

The ALJ found that Darabed has the following severe impairments: chronic knee complications and chronic pain. Tr. 14. At step 3, the ALJ determined, without explanation, that

---

[9] This finding by the Administration, which was adopted by the ALJ and is not challenged herein, appears to be inconsistent with 20 C.F.R. § 404.1574(c)(5). Under that regulation, if a claimant worked for more than 6 months, the Administration will not consider work performed at the substantial gainful activity earnings level for more than 6 months to be an unsuccessful work attempt regardless of why it ended or was reduced below the substantial gainful activity level.

Darabed does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  Tr. 16.  The ALJ proceeded to step 4 and, in doing so, he set forth his findings as to the claimant's residual functional capacity ("RFC").  Tr. 16.  The ALJ determined that Darabed has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), but with a sit/stand option, somewhat limited in terms of fluency in English, limited to low stress unskilled work, non-complex work with no bargaining, no mediating, and no arbitration, low production quotas, no exposure to hazards or unprotected heights, and no frequent stooping or bending.  Tr. 16.  Because Darabed's prior employment as a cashier was stated by the VE to be light work, and Darabed's prior employment as a crane operator was stated by the VE to be medium work, the ALJ determined that Darabed could not perform his past relevant work.  Tr. 19.

The ALJ determined that, based on Darabed's age on the alleged disability onset date, Darabed is defined as a younger individual (between the ages of 18-44).  Tr. 19.  The ALJ determined that Darabed has a high school education and can communicate in English.  Tr. 19.  However, the ALJ noted that Darabed's attorney stated that Darabed speaks in English but does not read or write in English.  Tr. 19.  The ALJ determined that transferability of job skills is not material to a determination of Darabed's disability.  Tr. 19.

Ultimately, the ALJ determined that, considering Darabed's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.  Tr. 19-20.  Specifically, the ALJ found that Darabed could do the following jobs: dowel inspector, table worker, lens block gauger, laundry worker and bench assembler.  Tr. 20.  Accordingly, the ALJ determined that Darabed has not been under a disability from the alleged onset date of September 16, 2005 through the date of the ALJ's decision.  Tr. 20.

## V. Parties' Arguments

Darabed asserts that there are three main issues for review. Pl's Brief at 2. Darabed first argues that the "ALJ's decision is not based on substantial evidence and the ALJ committed legal error when he failed to evaluate the evidence consistent with the law and Social Security's own rules and regulations." Pl's Brief at 2. Within this argument, Darabed more specifically asserts: (1) the ALJ failed to fully evaluate the evidence and state the basis for his conclusions; (2) the ALJ failed to properly evaluate the severity of the impairments at step 2 and step 3 of the sequential analysis; (3) the ALJ committed legal error when he failed to evaluate Darabed's need for an assistive device; and (4) the ALJ committed legal error when he failed to evaluate Reflex Sympathetic Dystrophy ("RSD"), also known as Complex Regional Pain Syndrome ("CRPS") according to SSR 03-02p. Pl's Brief at 13-17. Darabed next argues that the "ALJ committed legal error when he failed to properly evaluate pain and credibility."[10] Pl's Brief at 17. Finally, Darabed argues that "[n]ew evidence warrants a remand."[11] Pl's Brief at 19.

In response, the Commissioner argues that "[s]ubstantial evidence supports the ALJ's RFC finding for a range of sedentary work." Def's Brief at 11. The Commissioner next argues that "[s]ubstantial evidence supports the ALJ's credibility findings." Def's Brief at 15. Finally, the Commissioner argues that "[t]he evidence submitted after the ALJ's decision does not warrant a remand under sentence 6 of 42 U.S.C. § 405(g)." Def's Brief at 16.

---

[10] Because the ALJ did not: (1) conduct a proper analysis at step three; (2) properly consider Darabed's RSD/CRPS claim; or (3) properly consider Darabed's need for and/or use of assistive devices, the undersigned is unable to analyze whether or not there is substantial evidence to support the ALJ's credibility findings.

[11] Darabed's request for remand under sentence six of 42 U.S.C. § 405(g) is not addressed herein. A sentence six remand is warranted only if the evidence is "new" and "material" and only if "good cause" is shown by the party seeking remand for the failure to present the evidence to the ALJ. *Cotton v. Sullivan*, 2 F.3d 692, 695-696 (6th Cir. 1993); *Sizemore v. Sec'y of Health and Human Services*, 865 F.2d 709, 711 (6th Cir. 1988). To find that new evidence is "material," there must be a reasonable probability that the Commissioner would have reached a different disability determination if presented with the new evidence. *Id.* Having reached the conclusion that the ALJ's analysis and consideration of certain matters is deficient, it would be premature to proceed with a review of that decision to determine whether the "new evidence" is "material."

**VI. Law & Analysis**

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence, or indeed, a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Darabed v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.   The ALJ did not provide any analysis supporting his conclusion that Darabed's impairment did not meet or equal a Listing. Therefore, this matter should be remanded.**

At step 3, the ALJ provided a one-sentence conclusion, without any explanation, that Darabed does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.[12] Tr. 16. This bare conclusion is insufficient to satisfy the

---

[12] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P , App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

Commissioner's duty when making findings of fact and decisions as to the rights of individuals applying for disability.  42 U.S.C. § 405(b)(1).  Specifically, under the Social Security Act,

> The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this title [42 USCS §§ 401 et seq.]. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based . . .

42 U.S.C. § 405(b)(1).

Under this statute, the ALJ is "required to discuss the evidence and explain why he found that appellant was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  A claimant who is found to have an impairment that meets or medically equals a Listing at step 3 is entitled to benefits regardless of an ALJ's conclusions at steps 4 or 5.  *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. April 1, 2011).  Without an evaluation of the evidence, comparison of that evidence to the Listings and an explained conclusion, meaningful judicial review cannot occur; "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* (*citing Clifton*, 79 F.3d 1007, 1009).  That is why the Sixth Circuit found, in *Reynolds,* that an ALJ's failure to analyze a claimant's physical condition in relation to the Listed Impairments was not harmless error. *Id.; see also May v. Astrue*, 2011 U.S. Dist. LEXIS 88551, *24-25 (N.D. Ohio June 1, 2011).

Darabed argues that that the Commissioner did not satisfy his duty to identify the Listing(s) he considered or explain the evidence that led him to find that Darabed's impairments did not meet or equal a Listing.  Darabed specifically refers to Listing 1.02(A). [13] Darabed also

---

[13] Listing 1.02(A) addresses Major dysfunction of a joint(s) (due to any causes) and specifically provides is:

argues that, because the ALJ did not consider his CRPS claim, it was impossible for the ALJ to consider the combination of impairments. Pl's Brief at 14-15.[14] The Commissioner argues that Darabed has made no attempt to, and cannot, show that he meets Listing 1.02(A). Def's Brief at 14.

While it is correct that the burden of proof rests with the claimant at steps 1-4,[15] because the ALJ provided no analysis at step 3, the undersigned cannot effectively evaluate whether or not the ALJ's decision is supported by substantial evidence. *See Reynolds*, 424 Fed. Appx. at 416. Specifically, this Court does not know what Listing or Listings the ALJ reviewed and/or what evidence the ALJ evaluated to reach his ultimate conclusion that Darabed's impairments did not meet or equal a Listing. Further, the Commissioner only argues that Darabed cannot show that his impairments met Listing 1.02. However, as is required by 20 C.F.R. §404.1520(a)(4)(iii), at step 3, a determination must also be made as to whether an impairment medically *equals* a Listing.

As in *Reynolds*, it cannot be said that the complete lack of explanation at step 3 is harmless error. While harmless error has been relied upon to uphold step 3 findings notwithstanding an insufficient analysis, harmless error is applied cautiously in administrative review settings. *See Fischer-Ross v. Barnhart*, 4341 F.3d 729, 733 (10th Cir. 2005) (finding that

---

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).
>   With:
>   A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

[14] As noted below in the undersigned's separate analysis of Darabed's CRPS claim, the undersigned agrees with Plaintiff in his argument that ALJ did not properly consider or evaluate the CRPS claim.

[15] *Walters*, 127 F.3d at 529.

11

*Clifton* did not categorically reject the application of harmless error analysis in the context of a step three finding); *Hufstetler v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 64298, *27 (N.D. Ohio June 17, 2011) (citing *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

Application of harmless error may be appropriate where a review of material that the ALJ did consider leads to the conclusion that no reasonable fact finder, following the correct procedure, could have resolved the factual matter in another manner. *Hufstetler*, 2011 U.S. Dist. LEXIS at 26-27. In *Hufstetler*, the Court found that the ALJ's lack of a full discussion at step three was harmless error because the ALJ's findings at step four provided sufficient information for the Court to determine that no reasonable administrative fact finder would have resolved the matter differently. *Hufstetler*, 2011 U.S. Dist. LEXIS at 26-27; *see also Malone v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 130537, *4-6 (N.D. Ohio November 10, 2011)(finding that, based on a review of the ALJ's decision as a whole, remand was not necessary even though the ALJ's decision contained only a conclusory statement regarding step three).

Here, in contrast to *Hufstetler and Malone*, the ALJ's complete failure to explain how he reached his conclusion that Darabed's impairments do not meet or medically equal a Listing is not harmless error. Although the ALJ did discuss the medical evidence in connection with steps 2, 4 and 5 (Tr. 14-18 ), it cannot be said, based on a review of the material that the ALJ did consider, that no reasonable fact finder, following the correct procedure, would have resolved the Step 3 finding in another manner**.**

The following discussion of two of the characteristics under Listing 1.02(A) illustrates that a reasonable fact finder might find that Darabed's impairments meet or equal Listing 1.02(A). One characteristic under Listing 1.02 (A) is chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint. *See* Listing 1.02(A). The

12

ALJ found that Darabed does in fact have severe impairments: chronic knee complications and chronic pain. Tr. 14. Further, the ALJ indicated that Darabed's left knee pain limits function. Tr. 14, 488. The ALJ also stated that Darabed had some decreased range of motion and was unable to fully extend his right knee. Tr. 14, 184. The foregoing evidence and findings by the ALJ might lead a reasonable fact finder to reach a determination that Darabed does in fact have chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint, one of the characteristics under Listing 1.02(A).

Another characteristic under Listing 1.02(A) is gross anatomical deformity. *See* Listing 1.02(A). One example of a gross anatomical deformity as specified in Listing 1.02(A) is instability. The ALJ indicated that Darabed was unable to perform stance and balance and could not heel-toe walk. Tr. 16. These indications are based on Dr. Moten's evaluation of Darabed. Tr. 16, 572. This evidence might lead a reasonable fact finder to reach a determination that Darabed does in fact have a gross anatomical deformity, i.e., instability, within the meaning of Listing 1.02(A).

A full review and analysis after remand may not result in a disability finding at step 3 but, without any explanation, such a possibility cannot be ruled out definitively. Moreover, the foregoing examples demonstrate that, at the very least, the step 3 analysis should have included more than a bare conclusion. The examples also demonstrate that Darabed, through medical evidence, has put forth evidence relative to step 3 of the sequential evaluation.

Based on the foregoing, application of the harmless error doctrine is not warranted in this instance. Therefore, it is recommended that this matter be remanded for evaluation of the evidence, comparison of that evidence to the Listings, and an explained conclusion under step three consistent with 42 U.S.C. § 405(b)(1).

**B.     The ALJ's RFC assessment is inconsistent with SSR No. 96-9p because it does not clearly explain how the evidence regarding Darabed's use and/or need for crutches or other assistive devices was considered. Therefore, this matter should be remanded.**

Notwithstanding the ALJ's acknowledgement of Darabed's use of crutches on some occasions and lack of use of assistive devices on other occasions,[16] the ALJ does not explain how this evidence was considered when he established the RFC for Darabed. The ALJ's failure to do so is inconsistent with SSR 96-9p. Soc. Sec. Ruling No. 96-9p, 1996 SSR LEXIS 6, at *15 (Soc. Sec. Admin. July 2, 1996). SSR 96-9p requires that there be an explanation of how evidence in the file was considered in an RFC assessment. *Id.* Moreover, pursuant to SSR 96-9p, the use of hand-held assistive device(s), if required, may be a potential exertional limitation or restriction. *Id* at * 15-20. Therefore, a complete explanation is necessary to enable a meaningful review of the RFC assessment.

The Commissioner argues that the burden of proof was on Darabed to prove that assistive devices were needed to ambulate. Def's Brief at 15. While it is correct that, at steps 1 through 4, the burden of proof is with the claimant,[17] the issue here is not whether Darabed put forth evidence on this point. This is not a case where a claimant has failed to submit evidence to support his need to use and actual use of assistive devices. The ALJ himself references portions of the record that document Darabed's use of crutches. Tr. 14-15.

What is an issue is whether the ALJ followed the agency's own rules because "[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified." *Cole v. Comm'r of Soc Sec.*, No. 09-4309, 2011 U.S. App. LEXIS 19392 *10 (6th Cir. September 22, 2011) (internal quotations omitted).

---

[16] Tr. 14-15.

[17] *Walters*, 127 F.3d at 529.

(citing *Blakely v. Comm'r of Soc Sec*, 581 F.3d 399, 407 (6th Cir. 2009)). As noted, the ALJ here did not provide an explanation as to how the evidence regarding use of assistive devices was considered in establishing Darabed's RFC. The failure to do so is inconsistent with the procedure set forth in SSR 96-9p. Accordingly, it is recommended that this matter be remanded for a more complete RFC assessment consistent with SSR 96-9p.

C.   **The ALJ failed to consider, or even mention, Darabed's claimed CRPS impairment. Therefore, this matter should be remanded.**

At the conclusion of the September 16, 2009, hearing, Darabed's attorney specifically noted that independent physicians "came to the conclusion that he [Darabed] had a complex regional pain syndrome." Tr.39. In response to this and subsequent statements regarding the CRPS, the ALJ said "[i]t's a good point. I'll take that into consideration." Tr. 39. SSR 03-2p addresses how to evaluate cases involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome ("RSDS/CRPS"). Soc. Sec. Ruling No. 03-2p, 2003 SSR LEXIS 2 (Soc. Sec. Admin. 2003). SSR 03-02p specifically states that "[c]laims in which the individual alleges RSDS/CRPS are adjudicated using the sequential evaluation process, just as for any other impairment." *Id* at *17.

Here, the ALJ failed to follow SSR 03-2p because although he did discuss Darabed's allegations of pain, he did not even mention, let alone discuss, Darabed's claim of CRPS. This failure is magnified by the ALJ's explicit statement at the hearing that he would take the CRPS into consideration. Tr. 39.

The Commissioner's argument that Darabed does not meet the diagnostic criteria for RSD/CRPS as set forth in SSR 03-2p is in essence a harmless error argument, i.e., had the CRPS been evaluated as required by SSR 03-2p, the ALJ's ultimate decision would not have been impacted. Tr. 13-14. As noted, application of harmless error may be appropriate where, upon a

15

review of material that the ALJ did consider, it can be said confidently that no reasonable fact finder, following the correct procedure, could have resolved the factual matter in another manner. *Hufstetler*, 2011 U.S. Dist. LEXIS at 26-27. Here, however, because the ALJ did not even mention, let alone discuss, Darabed's claim of CRPS, this Court cannot guess as to what material was considered by the ALJ relative to this alleged impairment. Accordingly, application of harmless error in this instance would not be appropriate. *See e.g. Morales v. Astrue*, 2010 U.S. Dist. LEXIS 105985, 5-6 (D. Colo. 2010) (finding that an ALJ's failure to consider the claimant's CRPS was not harmless error).

Based on the ALJ's failure to evaluate Darabed's CRPS claim in accordance with SSR 03-2p, it is recommended that this matter be remanded for an evaluation of Darabed's CRPS claim consistent with SSR 03-2p. *See Cole*, 2011 U.S. App. LEXIS at *10.

### V. Conclusion and Recommendation

For the foregoing reasons, it is recommended that this case be REVERSED and REMANDED for further proceedings consistent with this Report and Recommendation.[18]

Dated: December 6, 2011

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[18] The recommendation to remand is not and should not be construed as a determination that Darabed is in fact disabled.